GRAY DRUG STORES, INC., and Jerome A. Weinberger, Plaintiffs,

v.

Harold C. SIMMONS, Individually, Harold C. Simmons, as Sole Trustee of the 1964 Trust for the Benefit of the Children and Grandchild of Harold C. Simmons, National City Lines, Inc., Contran Corporation, and Contran Holding Company, Defendants.

No. C 81–1724.

United States District Court, N. D. Ohio, E. D.

Aug. 31, 1981.

Ellis H. McKay, Leigh B. Trevor, Maynard F. Thomson, Jones, Day, Reavis & Pogue, Cleveland, Ohio, David J. White, Hugh R. Whiting, Jones, Day, Reavis & Pogue, Dallas, Tex., for plaintiffs.

Donald E. Scott, Jeffrey S. Davidson, Phillip H. Hecht, Kirkland & Ellis, Washington, D. C., Wayne C. Dabb, Jr., Baker & Hostetler, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

### I. INTRODUCTION

This action arises out of a tender offer by defendant National City Lines, Inc. ("NCL") for approximately 25% of the outstanding common stock of plaintiff Gray Drug Stores, Inc. ("Gray"). Gray has moved for a preliminary injunction.

Gray is an Ohio corporation with its principal executive offices in Cleveland, Ohio. Gray's stock is traded on the New York Stock Exchange under the designation "GrayDr". Mr. Jerome A. Weinberger, Chairman of the Board and Chief Executive Officer of Gray, owns more than 100,000 shares of its outstanding common stock.

As of June 22, 1981 Gray operated 361 retail drug stores located in Ohio, Florida, Maryland, Virginia, the District of Columbia, Pennsylvania, Delaware, New York, Kentucky and West Virginia. The stores sell a wide variety of drugs and general merchandise.

Until April, 1981 Gray also operated discount department stores through its Rink's Discount Department Store Division. In April, Gray sold its interest in the Rink's Division to Cook-Car, Inc. and used the proceeds to acquire Drug Fair, Inc. in May, 1981. As a result of these transactions, Gray's sole endeavor is the operation of retail drug stores.

NCL was incorporated in Delaware in 1936 and has its principal offices in Dallas, Texas. NCL, through its subsidiaries, is engaged in interstate trucking and terminal leasing activities, real estate development, and oil and gas activities.

In 1980, Contran Corporation ("Contran"), a Delaware corporation with its principal offices in Dallas, Texas, acquired control of NCL by obtaining approximately 92% of NCL's outstanding common stock through open market purchases by Contran subsidiaries and through a tender offer by a Contran subsidiary.

Prior to 1979, Contran was a publicly held corporation registered under the Securities Exchange Act of 1934. Through a series of transactions in 1979 Contran went private and is no longer required to file periodic statements with the Securities and Exchange Commission ("SEC").

Through subsidiaries other than NCL and its subsidiaries, Contran is engaged in land management, agricultural, oil and gas, and mortgage financing activities. Roughly 99% of Contran's outstanding common stock is owned by Contran Holding Company ("Contran Holding"), a Texas corporation with its principal offices in Dallas, Texas. Contran Holding is a holding company, the principal asset of which is Contran common

stock. Contran Holding is wholly owned by a trust established in 1964 by Mr. Harold C. Simmons for the benefit of his children and his grandchild, of which Simmons is sole trustee (the "Trust").

As sole trustee, Simmons has the power to vote and to direct the disposition of Contran Holding shares held by the Trust. As Chairman of the Board of Contran Holding, Simmons has the power to vote and to direct the disposition of Contran shares owned by Contran Holding. Simmons is also President and a Director of Contran and Chairman of the Board and Chief Executive Officer of NCL.

On or about July 15, 1981, NCL began purchasing shares of Gray stock on the open market. As of August 3, 1981 NCL had acquired approximately 31,400 shares (approximately 1%) of Gray's outstanding common stock through open market purchases.

NCL announced on August 5th that it intended to make a cash tender offer for up to 650,000 of the outstanding shares of Gray stock at $15.00 per share (the "Offer"). In the event Gray shareholders tender the 650,000 shares NCL seeks, NCL will have acquired roughly 26% of Gray's outstanding common stock by virtue of its open market purchases and the Offer.

On August 11th NCL filed a Schedule 14D–1 with the SEC and formally published the Offer in newspapers. Under SEC regulations, Gray opted to mail NCL's Offer to its shareholders and reportedly did so on August 18th.

Gray filed this action the next day, August 19th, pursuant to §§ 14(d), 14(e) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(d), 78n(e) and 78t, and the rules and regulations promulgated thereunder seeking to preliminarily and permanently enjoin NCL's Offer.

Under SEC Rule 14d–7, 17 C.F.R. § 240.-14d–7 (1980), those shareholders who tendered shares pursuant to the Offer lose the right to withdraw such tendered shares at midnight, August 31, 1981. After that time NCL may begin to purchase any tendered shares up to the 650,000 maximum stated in the Offer. Aware of the need for both a meaningful hearing and a ruling on the question of preliminary injunctive relief before the August 31st deadline, this Court granted Gray's motion for expedited discovery. Gray formally filed its motion for a preliminary injunction on August 21st, the hearing thereon was held on August 27, 1981.

## II. JURISDICTION

This Court's jurisdiction is not in dispute and properly lies under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

## III. ISSUES

The pleadings and briefs of the parties addressed numerous issues with respect to plaintiff's substantial likelihood of success on the merits. Issues raised involved the adequacy of disclosure under the requirements of the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder and NCL's probable status as an "investment company" under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* At a pre-hearing conference, however, counsel for Gray indicated that discovery had revealed that certain of the questions originally raised in the pleadings and briefs were no longer at issue. After extensive discussion, the precise issues with respect to plaintiff's substantial likelihood of success on the merits before this Court at the hearing for preliminary injunction were narrowed to the following:

1. Whether the statement, "By virtue of the stock ownership described above and the holding of such offices, Mr. Simmons may be deemed to control Contran Holding, Contran, the Purchaser, and all other subsidiaries of Contran," (Offer, P. 9) adequately discloses the "control" relationship between Simmons, the Trust, Contran Holding, and Contran and NCL for purposes of 15 U.S.C. § 78n(e).

2. A. Whether NCL is the sole "bidder" for Gray stock within the meaning of SEC Rule 14d–1(b)(1), 17 C.F.R. § 240.14d–1(b)(1) (1980) and Schedule 14D–1, General Instruction G(i), 17 C.F.R. § 240.14d–100 (1980).

B. Alternatively, without regard to NCL's status under Rule 14d–1(b)(1) and General Instruction G(i), whether information regarding the following must be disclosed pursuant to Schedule 14D–1, Item 10(f), 17 C.F.R. § 240.14d–100 (1980):

a. The financial position of Simmons, the Trust, Contran Holding, and Contran and its subsidiaries and the financial transactions between those entities;

b. A more definite statement with respect to the purpose of the Offer from the point of view of Simmons, the Trust, Contran Holding, and Contran and its subsidiaries;

c. A more definitive statement of intent with respect to future representation on the Board of Directors of Gray and future purchases of Gray stock from the point of view of Simmons, the Trust, Contran Holding, and Contran and its subsidiaries; and

d. A statement of the history of Simmons, the Trust, Contran Holding, and Contran and its subsidiaries regarding corporate takeovers, "upstream financing" in past corporate takeover transactions, and recent litigation alleging either violations of Securities laws, rules and regulations or breach of fiduciary duties.

## IV. DISCUSSION

■ The Securities Exchange Act of 1934 (the "1934 Act"), violations of which are alleged in this action, was not an expression by Congress that tender offers are inherently evil. Congress did not intend to provide the management of target companies with a weapon to defeat tender offers which they consider hostile. Rather, the 1934 Act is a judgment by Congress that shareholders to whom a tender offer is made are entitled to a complete and accurate foundation of facts upon which to base their decision whether to tender.

## A. THE STANDARD FOR EVALUATING A MOTION FOR PRELIMINARY INJUNCTION

The Court of Appeals for the Sixth Circuit has articulated four factors to be evaluated when deciding whether a preliminary injunction should issue:

1. Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the plaintiffs have shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others;

4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The Sixth Circuit has also recognized:

In addition to assessing the likelihood of success on the merits, the court must consider the irreparability of any harm to the plaintiff, the balance of injury as between the parties, and the impact of the ruling on the public interest. In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction. . . . It thus appears that the precise wording of the standard for the likelihood of success on the merits is not as important as a realistic appraisal of all the traditional factors weighed by a court of equity. A balancing is required, and not the mechanical application of a certain form of words.

*Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537–38 (6th Cir. 1978), *quoting Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. HEW*, 418 F.Supp. 585, 586 (E.D.Mich.1976).

■ This Court is particularly mindful that the 1934 Act does not relieve a party who seeks to preliminarily enjoin an alleged violation from satisfying "the traditional prerequisites of extraordinary equitable relief by establishing irreparable harm." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61, 95 S.Ct. 2069, 2077, 45 L.Ed.2d 12 (1975) (District Court properly denied preliminary injunction when plaintiff corporation had shown no irreparable harm from defendant stock purchaser's failure to comply with filing requirements of 15 U.S.C. § 78m(d)).

## B. PLAINTIFF'S SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

1. SEC Rule 14d–1(b), 17 C.F.R. § 240.14d–1(b) (1980) provides, in pertinent part, "Unless the context otherwise requires, all terms used in Regulation 14D and Regulation 14E have the same meaning as in the Act and in Rule 12b–2 (§ 240.12b–2) promulgated thereunder." Under SEC Rule 12b–2(f), 17 C.F.R. § 240.12b–2(f) (1980), "control" is defined as the "possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

Gray contends that the statement in the Offer that Simmons "may be deemed to control" Contran Holding, Contran, NCL, and the other Contran subsidiaries by virtue of the offices he holds and the stock he owns is false and misleading. 15 U.S.C. § 78n(e) provides, in relevant part:

It shall be unlawful for any person to . . . omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer . . . .

Gray asserts that the Offer should, at a minimum, state that Simmons "controls" NCL and the other corporations. Gray would prefer that the Offer state that Simmons "has absolute and unfettered control" over NCL and the other corporations. Only if the relationship were stated in such unequivocal terms, Gray argues, would the statement be "not misleading."

Articles of incorporation, by-laws, and the interests of minority shareholders provide constraints within which the officers and directors of the corporations must work. Given that such constraints do exist, a statement in the Offer that Simmons "controls" is conceivably more misleading than the statement that Simmons "may be deemed to control." Requiring NCL to state that Simmons "controls" NCL would connote a shell corporation, something which NCL is not.

Aside from erroneous connotations regarding NCL's status as a bona fide corporation which may follow from a statement that Simmons "controls," the difference between "controls" and "may be deemed to control" is essentially semantical. The purpose of the 1934 Act is to insure informed shareholder decisions regarding tender offers. In light of this purpose, the present language of the Offer adequately informs Gray's shareholders of the "control" relationship between Simmons, the Trust, Contran Holding, and Contran and its subsidiaries and NCL.

2. SEC Rule 14d–1(b)(1), 17 C.F.R. § 240.14d–1(b)(1) (1980) defines "bidder" as "any person who makes a tender offer or on whose behalf a tender offer is made . . . ." Schedule 14D–1, General Instruction G(i) 17 C.F.R. § 240.14d–100 (1980), provides, "The term 'bidder' means any person on whose behalf a tender offer is made."

Schedule 14D–1, General Instruction C, 17 C.F.R. § 240.14d–100 (1980) provides:

If the statement is filed by a partnership, limited partnership, syndicate or other group, the information called for by Items 2–7, inclusive, shall be given with respect to: (i) Each partner of such partnership; (ii) each partner who is denominated as a general partner or who functions as a general partner of such limited partnership; (iii) each member of such syndicate or group; and (iv) each person controlling such partner or member. If the statement is filed by a corporation, or if a person referred to in (i), (ii), (iii), or (iv) of this Instruction is a corporation, the information called for by the above mentioned items shall be given with respect to: (a) Each executive officer and director of such corporation; (b) each person controlling such corporation; and (c) each executive officer and director of any corporation ultimately in control of such corporation. A response to an item in the statement is required with respect to the bidder and to all other persons referred to in this instruction unless such item specifies to the contrary.

The instruction contemplates the disclosure of information required under Items 2–7, inclusive, by the controlling entities of a "bidder" corporation and the more extensive disclosure of information under Items 1–11, inclusive, by the "bidder" corporation itself. Particularly note that the extensive financial disclosure required under Item 9 is required only of the "bidder" corporation and is not required of those entities which control the "bidder" corporation.

No question exists that NCL is a "bidder" corporation and has made the disclosures required by Items 1–11, inclusive. No question exists that Simmons, the Trust, Contran Holding, and Contran are controlling entities with respect to NCL and have made the disclosures required by Items 2–7, inclusive. The precise question is whether the controlling entities of NCL are persons "on whose behalf" NCL is making the tender offer, thus making the controlling entities "bidders" within the meaning of SEC Rule 14d–1(b)(1) and Schedule 14D–1, General Instruction G(i). Gray contends that Simmons, the Trust, Contran Holding, and Contran and its subsidiaries are persons "on whose behalf" NCL is making the Offer, that they are therefore "bidders", and that they must, therefore, under General Instruction C, disclose the information required under Items 1 and 8–11, inclusive, in addition to the information they have already disclosed under Items 2–7, inclusive, by virtue of their status as controlling entities of NCL.

Unfortunately, precedent interpreting the "on whose behalf" language of SEC Rule 14d–1(b)(1) and Schedule 14D–1, General Instruction G(i) is virtually non-existent. The SEC did, however, issue a release in 1979 stating:

> The terms "bidder" and "subject company" provide shorthand references to the principal participants in a tender offer and avoid certain perjorative terms now commonly used to describe participants in a tender offer. The term "bidder" would mean any person who makes a tender offer or on whose behalf a tender offer is made.

*Securities Exchange Release No. 15548*, [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 81,935 at pp. 81, 216 (Feb. 5, 1979) (Footnote omitted).

*Riggs National Bank v. Allbritton*, 516 F.Supp. 164 (D.D.C.1981) involved a cash tender offer by an individual, Allbritton, for shares of common stock of the Riggs National Bank. Riggs sued to enjoin Allbritton's tender offer on several theories, one of which was that the three companies of which Allbritton was sole owner and Chairman of the Board were "bidders" within the meaning of the Comptroller of the Currency's Tender Offer Rule and that further disclosures by the companies were required.

The relevant portion of the Comptroller's Rule at issue in *Allbritton* is identical to the Rule in question here. Hence, this Court finds as persuasive the *Allbritton* Court's interpretation of the Comptroller's Rule.

Focusing on the evidence presented at the preliminary injunction hearing, the Court noted that Allbritton was to absorb the entire debt for the purchase of the tendered shares and that Riggs had proffered no evidence that Allbritton was acting in conjunction with his affiliates with respect to the particular tender offer in question. The Court concluded that Allbritton's affiliates were not entities "on whose behalf" Allbritton was acting within the meaning of the Comptroller's Rule; *A fortiori*, the corporations were not "bidders" under the Comptroller's Rule and were not compelled to make additional disclosures.

Gray pointed to the following provision in the Offer as evidence that Simmons, the Trust, Contran Holding and Contran are entities "on whose behalf" NCL has made the Offer:

> *The Purchaser has the right to transfer to one or more affiliates or subsidiaries of the Purchaser the right to purchase any of the Shares tendered pursuant to the Offer,* but any such transfer will not relieve the Purchaser of its obligations under the Offer and will in no way prejudice the rights of tendering shareholders to receive payment for Shares properly

tendered and purchased pursuant to the Offer. (Emphasis added)

(Offer, P. 6). Yet, Gray offered no evidence that NCL has initiated or has a present plan or intent to initiate transactions pursuant to the clause. That NCL has the ability to transfer its rights to purchase tendered shares of Gray stock to its affiliates is not sufficient, standing alone, to conclude that NCL's affiliates are entities "on whose behalf" NCL has made the Offer. Moreover, the evidence presented at the hearing and the terms of the Offer itself clearly show that NCL is the sole purchasing entity under the Offer, that NCL is to pay for all shares of Gray stock tendered pursuant to the Offer, and that NCL has adequate cash reserves to do so.

■ Absent an affirmative showing of evidence by Gray that NCL is acting in conjunction with its affiliates with respect to this particular tender offer for Gray stock, this Court concludes that NCL alone is the principal participant making the Offer and is the sole "bidder" under SEC Rule 14d–1(b)(1) and Schedule 14D–1, General Instruction G(i).

B.  Item 10(f) of Schedule 14D–1 states: Item 10. Additional information. If material to a decision by a security holder whether to sell, tender or hold securities being sought in the tender offer, furnish information as to the following:

. . . .

(f) Such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

The SEC has indicated that Item 10(f) contemplates disclosure of "matters which are closely related to the various items of the Schedule." *Securities and Exchange Commission Release No. 34–13787 (July 21, 1977).* The Commission gave the following examples of "closely related" material information in the release: Transactions by the bidder in a class of stock of the target company other than that class for which the tender offer is made; material litigation other than that specifically required to be

disclosed under Item 10(e) which would reflect on the integrity of the bidder or on the ability of the bidder to repay loans made in connection with the tender offer; a six-year old conviction for which the individual had served a sentence or had been on probation during the five-year disclosure period for past convictions under Item 2(e).

Gray argues that disclosure under all 11 items of Schedule 14D–1 by NCL and disclosure under Items 2–7, inclusive, by Simmons, the Trust, Contran Holding, and Contran and its subsidiaries is misleading and that full disclosure under all 11 items of Schedule 14D–1 by Simmons, the Trust, Contran Holding, and Contran and its subsidiaries is necessary to make that which is required to be stated not misleading.

NCL is the sole "bidder" for Gray stock within the meaning of SEC Rule 14d–1(b)(1) and Schedule 14D–1, General Instruction G(i). Simmons, the Trust, Contran Holding, and Contran and its subsidiaries are the controlling entities of NCL within the meaning of Schedule 14D–1, General Instruction C. Schedule 14D–1, General Instruction C indicates that the controlling entities of a "bidder" are to make certain disclosures and that the "bidder" is to make more extensive disclosures.

Gray has pointed to nothing other than the relationship among Simmons, the Trust, Contran Holding, and Contran and its subsidiaries and NCL in support of its argument. As this Court views that relationship, NCL and the other entities have made full disclosure in accordance with the terms of Schedule 14D–1, General Instruction C. Gray has identified no misleading statement in the required disclosures which would be made not misleading by the additional disclosure Gray seeks. In short, Gray has failed to establish the prerequisite for the applicability of Item 10(f). Gray, therefore, merely seeks additional disclosure and has not made an argument for the disclosure of additional information to make that which is required to be disclosed not misleading.

In addition, as evidenced by the examples in the SEC Release, the information which Gray argues should be stated in the Offer is not of the same nature as that which the SEC contemplated as being within the purview of Item 10(f).

That Gray's contentions under Item 10(f) must fail is particularly evident with respect to the additional disclosure of financial information Gray seeks. Schedule 14D–1, Item 9 states:

> Item 9. Financial Statements of Certain Bidders. Where the bidder is other than a natural person and the bidder's financial condition is material to a decision by a security holder of the subject company whether to sell, tender or hold securities being sought in the tender offer, furnish current, adequate financial information concerning the bidder; *Provided, That if the bidder is controlled by another entity which is not a natural person and has been formed for the purpose of making the tender offer, furnish current, adequate financial information concerning such parent.*

17 C.F.R. § 240.14d–100 (1980) (emphasis added). As the text indicates, the SEC contemplated situations involving the additional financial disclosure which Gray seeks and decided that the financial information of non-natural persons who control a bidder need only be disclosed when the bidder was formed for the purpose of making the tender offer. NCL is not such a bidder. Furthermore, realizing that the SEC has considered the question and has limited the requirement of such disclosure to the situation stated in Item 9, this Court is reluctant to mandate such disclosure with respect to NCL's controlling entities under Item 10(f).

## C. INJURY

█ Focusing on the harm to Gray's shareholders if NCL were permitted to proceed with the Offer, Gray contends that a post-transaction damage remedy would not be sufficient. In support, Gray cites the following passage from *Riggs National Bank v. Allbritton, supra*:

> [T]he Court considers this situation to be one in which the injury that will result

cannot be alleviated by the payment of damages. The Offer is for less than all of the outstanding shares of the bank and, if successful, will vest effective control of the bank in an individual. Nontendering shareholders, as well as those who chose to tender are entitled therefore to be informed ... [about] the offeror and of the possible consequences of this shift in control on the bank. Once control is obtained by [the offeror], money damages cannot compensate injured parties who are concerned with their investment in the bank.

*Allbritton* involved a situation where the bidder's stated purpose was to acquire a substantial equity interest in the target company resulting in the power to control or to influence control over the target company. It was undisputed that, were the tender offer successful, Allbritton would have acquired effective control over the target company's affairs.

In contrast, NCL's Offer states:

> The purpose of the Offer is to enable the Purchaser to obtain a substantial equity position in the Company. If 650,000 Shares are purchased pursuant to the Offer, the Purchaser expects to be the largest single shareholder of the Company, but the Purchaser does not intend to acquire control over the business of the Company.
>
> . . . .
>
> Following completion of the Offer, the Purchaser may request representation on the Company's Board of Directors proportionate to the Purchaser's Share ownership and, if the Purchaser obtains such representation, it may be able to influence the business of the Company.

NCL's stated purpose is significantly different than that of the bidder in *Allbritton.* Gray's reliance on *Allbritton* is particularly misplaced when one considers that NCL's offer, assuming 650,000 shares are tendered, will vest only 26% ownership in NCL, far less than that which the bidder in Allbritton would have acquired. In addition, NCL will not be able to seek representation on Gray's

Board of Directors until the next scheduled shareholders' meeting in August, 1982. The immediate, effective control the bidder in *Allbritton* would have acquired were he not enjoined is not present in this case. By the time NCL is able to seek a board seat, this Court will have had an adequate opportunity to adjudicate the merits of Gray's claims. In such a situation the drastic equitable remedy of a preliminary injunction is not proper. *See also, Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60, 95 S.Ct. 2069, 2076, 45 L.Ed.2d 12 (1975).

Gray asserts that Gray itself will be harmed because "a takeover bid of this kind creates uncertainties about the target corporation that will concern its customers and others with longstanding relationships." *Elco Corp. v. Microdot, Inc.*, 360 F.Supp. 741, 753 (D.Del.1973). *Microdot* involved a tender offer by a competitor of the target company with the stated purpose of gaining control of the target company. The offer would have resulted in the bidder acquiring at least 51% of the target company's stock. The uncertainty of which the Court spoke arose from the potential Clayton Act § 7 implications of the tender offer and from the industry custom of doing business with long term contracts. Such a situation is simply not before this Court with respect to NCL's offer for Gray stock.

█ Whether NCL will suffer injury if the preliminary injunction is issued is another consideration in this Court's decision on whether to enjoin the Offer.

Given that Gray has not shown a likelihood of success on the merits and has identified no immediate irreparable injury, enjoining the Offer would be harmful from NCL's point of view. Gray has hired Goldman, Sachs and Company as an adviser in an effort to defeat NCL's Offer. Considering that delay gives Goldman, Sachs and Company time to thwart NCL's Offer, which is substantially likely to withstand a challenge on the merits, that NCL would be harmed by an injunction is particularly evident.

Apart from actions by Gray and Goldman, Sachs and Company, the dynamics of the stock market could quite possibly have a detrimental impact on NCL's Offer. Given Gray's low probability of success on the merits, NCL should not have to suffer at the hands of the market while it awaits final adjudication of Gray's claims.

## V. *NCL'S MOTION TO PRELIMINARILY ENJOIN GRAY*

█ NCL has filed a counterclaim against the plaintiffs and has moved for a preliminary injunction. The counterclaim arises out of public statements by Gray's management and directors regarding NCL's Offer.

Based upon the evidence adduced at the hearing, NCL has been unable to meet the requisite burden of showing a substantial likelihood of success on the merits and irreparable injury with respect to the statements by Gray. Accordingly, it appears that NCL's motion to preliminarily enjoin Gray with respect to the statements made by Gray should be denied.

## VI. *CONCLUSIONS*

Gray has shown neither a likelihood of success on the merits nor irreparable injury to itself or to its shareholders. Restated, it appears that NCL's Offer adequately and accurately discloses that information considered material under SEC Rules and Regulations for Gray's shareholders to make an informed decision whether to tender. Furthermore, NCL has shown that it would be substantially harmed were the Offer enjoined. Having assessed the likelihood of success on the merits and having balanced the injury as between the parties, it appears that Gray's motion for a preliminary injunction should be denied.

It also appears that NCL's motion for a preliminary injunction should be denied.

IT IS SO ORDERED.