**ARKANSAS BEST CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**Emanuel R. PEARLMAN, Arthur M. Goldberg, Razorback Acquisition Corporation, a Delaware Corporation, Gemini Partners, L.P., a Delaware Limited Partnership, Transport Partners, P.P., a Delaware Limited Partnership, ERP Capital Corporation, a Delaware Corporation, D & NM Gemini Corporation, a Delaware Corporation, David Mandelbaum, Nathan Mandelbaum, EWS Gemini Corporation, a Delaware Corporation, Emil W. Solimine, AMG Gemini Corporation, a Delaware Corporation, MCC Trading Corporation, a Delaware Corporation, William L. Mack, and Earle I. Mack, Defendants.**

**Civ. A. No. 88–288–JJF.**

United States District Court,
D. Delaware.

June 13, 1988.

Robert Zimet, Anne Crawford and John Day of Skadden, Arps, Slate, Meagher & Flom, New York City, Thomas J. Allingham, II, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., for plaintiff.

Jesse A. Finkelstein and James C. Strom of Richards, Layton & Finger, Wilmington, Del., Philippe Solomon and Brian O'Conner of Wilkie, Farr & Gallagher, New York City, Steven D. Goldberg of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., for defendants.

## OPINION

FARNAN, District Judge.

The plaintiff, Arkansas Best Corporation ("Arkansas Best") has brought this action against the defendants Emanuel R. Pearlman, Arthur M. Goldberg, Razorback Acquisition Corporation ("Razorback"), Gemini Partners, L.P., Transport Partners, L.P., ERP Capital Corporation, D & NM Gemini Corporation, David Mandelbaum, Nathan Mandelbaum, EWS Gemini Corporation, Emil W. Solimine, AMG Gemini Corporation, MCC Trading Corporation, William L. Mack, and Earle I. Mack to enjoin a tender offer by Razorback for Arkansas Best stock. The Razorback offer will expire on June 14, 1988. Presently before the Court is the application of plaintiff for a preliminary injunction which would require the individual defendants to disclose information concerning their personal finances. The motion has been fully briefed and the Court held oral argument on June 7, 1988. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FACTS

1. Arkansas Best is a Delaware corporation with its principal place of business and corporate headquarters in Fort Smith, Arkansas. Arkansas Best has three principal subsidiaries: 1) ABF Freight Systems, which is a general commodity motor carrier, 2) Riverside Furniture Corporation, which is a manufacturer of home furniture items, and 3) ABC Treadco, Inc., which recaps truck tires and sells new tires to truck fleets. Arkansas Best's common stock and debentures are listed on the New York Stock Exchange. Arkansas Best debentures are convertible into common stock at $25.94 per share. Arkansas Best had 12,339,238 outstanding shares of common stock as of March 15, 1988, assuming full conversion of all outstanding debentures.

2. Defendant Razorback Acquisition Corporation is a Delaware corporation formed on May 2, 1988, for the sole purpose of making a tender offer for Arkansas Best stock. Razorback Acquisition has two shareholders—defendant Gemini Partners, L.P. ("Gemini") and defendant Transport Partners, L.P. ("Transport"). Gemini owns 75% of Razorback's outstanding capital stock and Transport owns 25% of Razorback's outstanding capital stock.

3. Gemini is a Delaware limited partnership formed on February 1, 1988, to invest in securities, leveraged buy-outs, tender of-

fers, recapitalizations, and other similar transactions. Gemini is composed of a group of shell corporations which are controlled by the individual defendants in this action. Defendant ERP Capital Corporation, which is controlled by defendant Emanuel Pearlman, is the executive general partner of Gemini. Gemini's other general partners are defendant EWS Gemini Corporation (controlled by defendant Emil W. Solimine), defendant AMG Gemini Corporation (controlled by defendant Arthur M. Goldberg), and defendant D & NM Gemini Corporation, which is controlled by defendants David Mandelbaum and Nathan Mandelbaum. ERP Capital Corporation, D & NM Gemini Corporation, EWS Gemini Corporation, and AMG Gemini Corporation have no business activity other than to act as the general partners of Gemini.

4. Defendant Transport Partners is also a Delaware limited partnership formed on May 2, 1988, solely for participation in this tender offer. MCC Trading Corporation is the general partner of Transport and was formed on May 2, 1988, solely for the same purpose. William Mack, Earle Mack, and Frederick Mack are the limited partners of Transport.

5. Defendant Pearlman who is the executive general partner of Gemini is also the President of Razorback.

6. Gemini began to acquire Arkansas Best shares in March, 1988. On March 24, 1988, Gemini purchased 12,000 shares of Arkansas Best. After making sporadic purchases during the next week, Gemini purchased a block of 300,000 shares of Arkansas Best on April 5, 1988. This sizable purchase raised Gemini's holdings in Arkansas Best to just under 5% of the outstanding shares.

7. On April 21, 1988, Pearlman purchased an additional block of Arkansas Best shares for Gemini. Pearlman made this purchase only after first obtaining the consent of Goldberg, Mandelbaum, and Solimine. This purchase caused Gemini to cross the 5% threshold level and required the partnership to file a Schedule 13D under § 13(d) of the Securities and Exchange Act, 15 U.S.C. § 78m(d).

8. On April 21, 1988, Goldberg and Solimine met with the Macks and offered them 25% of a possible purchase of Arkansas Best. The Macks informed Goldberg on April 26, 1988, that they would be interested in 25% of an Arkansas Best purchase.

9. In April, 1988, Goldberg contacted Bear Stearns & Co., Inc. ("Bear Stearns") to discuss the possible financing of Gemini's acquisition of Arkansas Best. Goldberg had extensive business dealings with Bear Stearns in the past. On April 26, 1988, Bear Stearns agreed to act as Gemini's financial advisor and dealer manager for the contemplated tender offer and agreed to place the subordinated debt securities necessary for the transaction, and on May 4, 1988, Bear Stearns was formally engaged as Razorback's investment banker.

10. Goldberg and Pearlman also contacted Bankers Trust seeking to arrange additional financing for the transaction, and on May 3, 1988, Bankers Trust executed a final commitment letter which provided for financing in the aggregate amount of up to $120 million, conditioned in part on the execution of definitive financing agreements.

11. On May 1, 1988, Goldberg, William Mack, Solimine, Pearlman, and David Mandelbaum met to discuss the timing of their proposed tender offer for Arkansas Best stock. The group decided that the tender offer would be announced in Gemini's Schedule 13D which was to be filed on May 2, 1988. They agreed that the tender offer would be for all of Arkansas Best's outstanding shares and debentures and would commence on May 6, 1988.

12. Razorback's tender offer commenced on May 6, 1988, and was initially scheduled to expire on June 3, 1988. The stated purpose of the tender offer was to "acquire control of the Company as a first step in acquiring the entire equity interest in Arkansas Best." As soon as practicable after consummation of the offer, Razorback would, according to the tender offer, attempt to consummate a merger or similar business combination with Arkansas Best. Under this merger, each outstanding share

"would be converted into the right to receive an amount in cash equal to the cash price per Share paid pursuant to the Offer." The Merger would also provide for the conversion of outstanding Debentures into shares of Arkansas Best stock, securities, or other property or assets. Razorback offered to buy all outstanding shares of Arkansas Best for $20.00 per share and all of the outstanding 7% Convertible Subordinated Debentures Due 2011 of Arkansas Best for $771.01 net per $1000 principal amount of debentures.

13. It was estimated that the tender offer would cost Razorback approximately $240 million in costs and expenses. Gemini Partners and Transport Partners committed to purchase up to $30 million and $10 million respectively of Arkansas Best's common stock. Gemini's contribution would be in the form of cash and 1,034,600 shares of Arkansas Best common stock. The shareholders of both Gemini Partners and Transport Partners indicated in the tender offer that they had a liquid net worth in excess of the amount of aggregate funding committed to the offer.

14. The tender offer also stated that Razorback was currently discussing with Bear Stearns possible subordinated financing of $100 million. According to the offer, Razorback had discussed with the stockholders of Gemini and Transport the possibility of obtaining their guarantee, if needed, of the subordinated debt financing. The stockholders of Gemini and Transport were said to be considering such guarantees and did represent to Razorback that their aggregate assets would sufficiently support the guarantees, if given.

15. The final piece in the financing plan was the Bankers Trust commitment to provide in the aggregate amount up to $120 million based upon the terms of the parties' May 3, 1988, Commitment Letter.

16. On May 25, 1988, Razorback issued a Supplement to its May 6, 1988 Offer to Purchase. The Supplement offered to purchase all of Arkansas Best's outstanding shares of common stock at $23.00 per share and all outstanding 7% Convertible Subordinated Debentures due 2011 at $886.66 net per $1,000 principal amount of debentures. The Supplement extended the expiration date of the tender offer to June 8, 1988.

17. The Supplement is conditioned on a number of events, one of which is "the execution by the Company of a definitive merger agreement with the Purchaser, in form and substance satisfactory to the Purchaser, providing for the Merger...." The merger agreement "will contain terms and conditions customary for transactions like the Merger, including, without limitation, a representation by the Company that its Board of Directors has approved the Offer and the Merger and recommends to Security holders that they tender their Securities to the Purchaser pursuant to the Offer."

18. Razorback stated in its Supplement that, because of the increased offering price in the Supplement, it would require approximately $280 million to pay the related costs and expenses of the Offer.

19. Section 3 of the Supplement to the Offer stated that the partners of Gemini and Transport had amended their letter agreement to provide for increased capital contributions. As of May 23, 1988, the Gemini partners had contributed $25,250,000 and the Transport partners had contributed $11,750,000 to Razorback. These sums fully satisfied the cash equity commitments of Gemini and Transport.

20. Section 3 of the Supplement stated that on May 24, 1988, Razorback received a letter from Bear Stearns stating that Bear Stearns was highly confident that $115 million of Razorback's Bridge Notes could be placed under current market conditions. This Bear Stearns Commitment Letter was based on several conditions, including the execution of a definitive merger agreement between Razorback and Arkansas Best. Razorback stated in Section 3 of the Supplement that it believed the satisfaction of the merger condition in the Supplement would satisfy the Federal Reserve Board's requirements regarding margin credit.

21. Finally, Section 3 of the Supplement provided that the commitment letter between Razorback and Bankers Trust had been amended on May 24, 1988, and this

amendment increased the total amount of bank financing available to Razorback to $138 million, subject to several conditions.

22. On June 6, 1988, Razorback extended the termination date of the offer to June 14, 1988.

## CONCLUSIONS OF LAW

Arkansas Best seeks a preliminary injunction to enjoin Razorback's tender offer on the ground that the tender offer as constituted unlawfully fails to disclose financial information concerning the individual defendants. Specifically, Arkansas Best contends that defendants Goldberg, Solimine, David and Nathan Mandelbaum, William and Earle Mack, and Pearlman are the primary motivating force behind the tender offer and under controlling SEC Regulations are "bidders" and, therefore, Arkansas Best contends that the failure of these individual defendants to disclose material financial information violates §§ 14(d) and 14(e) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78n(d) and (e) (collectively "the Williams Act"). In order to assess the merits of plaintiff's claim, the Court must first look to the Williams Act sections dealing with financial disclosures.

■ Section 14(d)(1) of the Williams Act requires that a tender offeror file with the SEC "a statement containing such of the information specified in Section [13(d)] of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors." Pursuant to § 14(d)(1), the SEC enacted Regulation 14D, 17 C.F.R. § 240.14d–1, which requires a tender offeror to disclose specific categories of information. General Instruction C of Schedule 14D–1 calls for a "bidder", who is defined as "any person on whose behalf a tender offer is made," to disclose eleven categories of information. 17 C.F.R. § 240.14d–100. Item 9 of General Instruction C which requires disclosure of financial statements applies only if "the bidder is other than a natural person" or "if the bidder is controlled by another entity which

is not a natural person and has been formed for the purpose of making the tender offer...." 17 C.F.R. § 240.14d–100, Item 9.

Under the plain wording of Item 9, it would appear that natural persons who are bidders would never have to disclose material financial information. The plaintiff, however, points out and defendants agree that the SEC in Release No. 5844 [1977–78 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 81,256 at 88,379 n. 22 (July 21, 1979), stated that "under facts and circumstances of a particular tender offer, financial information concerning a bidder who is a natural person may be material to an investment decision." In light of the SEC's position in this Release, it is necessary to determine if the individual defendants are bidders and, if so, whether disclosure of relevant financial information would be material to shareholders with regard to their decision of whether to tender their shares to Razorback.

In *Pabst Brewing Company v. Kalmanovitz*, 551 F.Supp. 882 (D.Del.), *aff'd*, 707 F.2d 1392 (3d Cir.1982), the question of when natural persons involved with a tender offer should be required to disclose information concerning their financial status was addressed. In *Pabst*, JMSL Acquiring Corporation ("JMSL") was formed solely for the purpose of commencing a partial tender offer for Pabst stock. *Id.* at 892. JMSL was the wholly-owned subsidiary of PST Acquiring Corporation ("PST") which was also created and capitalized solely to consummate the tender offer. *Id.* Paul Kalmanovitz owned 50% of PST's outstanding shares and Irwin Jacobs owned 24.5% of PST's outstanding shares. *Id.* at 885 n. 2. The JMSL tender offer was for 37% of Pabst's outstanding shares which would give JMSL control of 50.6% of Pabst stock. *Id.* at 884. JMSL intended to propose a second-step cash-out merger after completion of the tender offer. *Id.*

The *Pabst* Court found that Kalmanovitz and Jacobs were the "dominant and motivating principals behind the JMSL tender offer" based on their substantial capital investment in the tender offer. *Id.* at 892–

93. Judge Latchum found that the disclosure of financial information concerning Kalmanovitz and Jacobs would be material to shareholders in their decision of whether to tender their shares because both Kalmanovitz and Jacobs were scheduled to incur substantial indebtedness if the tender offer was successful. *Id.* at 893. Thus, Judge Latchum concluded that shareholders would need to know if Kalmanovitz and Jacobs had sufficient assets to repay their debtors. *Id.* The Court, therefore, ordered Kalmanovitz and Jacobs to make limited financial disclosures. *Id.* at 893–94.

The instant case bears resemblance to the factual circumstances in *Pabst.* In this case, a series of corporations and partnerships have been formed specifically for the purpose of making a tender offer for Arkansas Best shares. There is no doubt that the individual defendants, Pearlman, Solimine, Goldberg, the Mandelbaums, and the Macks control the acquisition entities and are the primary motivating force behind the offer. The individual defendants have contributed approximately $37,000,000 to this tender offer which Razorback estimates will cost a total of approximately $280,000,000. The Gemini partners will also contribute 1,034,600 shares of Arkansas Best to Razorback before consummation of the tender offer. These shares are valued at $14,431,813.50. The inescapable conclusion is that the individual defendants are the dominant and motivating principals behind Razorback's tender offer and, therefore, are bidders under 17 C.F.R. § 240.14d–100(G)(i).

■ Having concluded that the individual defendants are "bidders", I now turn to the question of whether information concerning their personal finances should be disclosed as part of the Tender Offer, on the theory that such information is material to the deliberations of reasonable shareholders when considering whether they will or will not tender their shares pursuant to the offer.

Plaintiff, Arkansas Best, argues that the financial status of the individual defendants is material to the tender decision of a shareholder, because plaintiff believes that the disclosure requested will demonstrate that the individual defendants possess liquid assets in excess of their present contribution to the pending offer. Plaintiff reasons that armed with such information a reasonable shareholder might choose to reject the present offer on the assumption that the defendants would raise their offer because they have the financial resources to do so.

Defendants respond that irrespective of their financial ability to pay more, they would not increase their bid beyond their estimation of the value of the stock and they further argue that their estimation of the value of the stock is reflected in their present offer.

On this issue, I conclude that under the facts of this case, the financial worth of the individual defendants is not material to the decision of a shareholder on whether to tender his or her shares. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

I reach this conclusion for two reasons. First, I do not agree that the disclosure of the extent of an individual's finances will materially assist a deliberating shareholder to better assess how much that or any individual may be willing to pay for stock in the context of a tender offer. In my view, the disclosure provisions of the Williams Act should serve a distinct and discreet purpose, i.e., to assure that shareholders are fully and fairly informed on the nature and conditions, if any, of an offer. Disclosure should not be permitted to become a tool of a litigious management's effort to thwart or stall the consideration by shareholders of a pending offer. It serves no purpose to invite speculation by deliberating shareholders that a bidder *may* be willing to raise its offer simply because its balance sheet indicates more funds *may* be available to the bidder. What makes an item of information material and, therefore, subject to disclosure is the likelihood that the information will meaningfully assist a reasonable shareholder in understanding the offer as constituted by the bidder. The concept of materiality should not extend to assisting corporate

managers and shareholders in the exercise of speculating whether a bidder may or may not be willing to increase a pending offer.

The second reason for my conclusion is that I believe the facts presented in *Pabst* are different than the facts here. The individual defendants in this case have already satisfied their financial commitments to this tender offer by their contribution of cash and stock, and there is no relevant future indebtedness for which they are personally liable. Under the terms of the offer here, a tendering shareholder does not have to rely upon the financial ability of the individual "bidders" to pay future indebtedness which if unpaid could affect the shareholder. A tendering shareholder in the instant case will receive cash upon consummation of the transaction and therefore need not be concerned with the bidder's payment of indebtedness in the future.

## CONCLUSION

In order for a preliminary injunction to issue, the rule of this Circuit requires the moving party to demonstrate:

(1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted.... Moreover, while the burden rests upon the moving party to make these requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest".... While these factors structure the inquiry, however, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a "delicate balancing" of all elements. On the basis of the data before it, the district court must attempt to minimize the probable harm to legally protected interests between the time that the motion for a preliminary injunction is filed and the time of the final hearing.

*Eli Lilly and Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136

(3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980).

Applying these factors, I conclude that plaintiff, Arkansas Best, has failed to demonstrate a reasonable probability of success on the merits and has failed to show that irreparable injury will occur if an injunction is not granted.

For these reasons, the Court will deny plaintiff's application for a preliminary injunction.

An Order has been entered.