POLAROID CORPORATION, Plaintiff,

v.

Roy E. DISNEY, Patricia A. Disney, Stanley P. Gold, Shamrock Holdings, Inc., a Delaware corporation, Shamrock Holdings of California, Inc., a California corporation, Shamrock Capital Investors III, Inc., a Delaware corporation, Emerald Isle Associates, L.P., a Delaware limited partnership, and Shamrock Acquisition III, Inc., a Delaware corporation, Defendants.

Civ. A. No. 88–525—CMW.

United States District Court, D. Delaware.

Oct. 14, 1988.

not corroborate Balaban's opinion about con- tract practices in the entertainment industry.

R. Franklin Balotti, Jesse A. Finkelstein and Gregory V. Varallo of Richards, Layton & Finger, Wilmington, Del. (Paul C. Saunders (argued), of Cravath, Swaine & Moore, New York City, of counsel), for plaintiff.

A. Gilchrist Sparks, III, Lawrence A. Hamermesh and Robert J. Valihura, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Pamela Jarvis (argued), of Fried, Frank Harris, Shriver & Jacobson, New York City, of counsel), for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff Polaroid Corporation ("Polaroid") brought this action for a preliminary injunction against defendants Roy E. Disney, Patricia A. Disney, Stanley P. Gold, Shamrock Holdings, Inc., Shamrock Holdings of California, Inc., Shamrock Capital Investors III, Inc., Emerald Isle Associates, L.P. and Shamrock Acquisition III, Inc. The three individual defendants will hereinafter be referred to as the "Disney defendants" and the four defendant corporations and defendant limited partnership will be referred to collectively as "Shamrock."

Polaroid filed this suit on September 20, 1988. It seeks a preliminary injunction against the cash tender offer for Polaroid common stock commenced September 9,

1988, ("the Offer") by defendant Shamrock Acquisition III, Inc. Polaroid contends the Offer was in violation of certain disclosure provisions of the Williams Act, sections 13(d), 14(d) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78m(d), 78n(d) and 78n(e), and the rules and regulations promulgated thereunder. Polaroid also seeks corrective disclosure, an amended offer, divestment of shares tendered during the period of Shamrock's alleged illegal conduct and an injunction against any future violations of the securities laws by Shamrock. This Court has jurisdiction over the case pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. This Opinion shall constitute this Court's Findings of Fact and Conclusions of Law as required by F.R.C.P. 52(a).

## I. BACKGROUND

### A. Facts

Defendant Shamrock Acquisition III, Inc., the corporation that made the tender offer to purchase Polaroid, is a wholly owned subsidiary of defendant Emerald Isle Associates, L.P. ("Emerald"). Emerald has a number of limited partners. These include, but are not limited to, Indiana Partners, L.P., Oregon Partners and Shamrock Capital, L.P. Defendant Shamrock Capital Investors III, Inc. is the general partner in Emerald and is itself a wholly owned subsidiary of defendant Shamrock Holdings of California, Inc. ("Holdings"). Holdings is a Delaware corporation of which defendant Stanley Gold is president and which is wholly owned by defendants Roy and Patricia Disney and their children.

The events leading up to the present action began in early 1988 when Shamrock began purchasing Polaroid shares. By June 1988, Shamrock had become one of Polaroid's largest shareholders, with beneficial ownership of more than 4% of the outstanding shares of Polaroid common stock. In June and early July, Shamrock sought to meet with Polaroid management. On July 12, 1988, a day before a scheduled meeting between the parties, Polaroid cancelled the meeting, and Polaroid's Board of Directors approved an Employee Stock Ownership Plan ("ESOP") in which 14% of Polaroid's common stock would ultimately be owned by Polaroid's employees.

On July 20, 1988, Shamrock filed with the Securities and Exchange Commission ("SEC") a Schedule 13D statement in which it disclosed that it owned approximately 8% of Polaroid's outstanding common stock, excluding the 9,716,600 new shares issued to the ESOP, and stated that the defendants had "acquired their shares to establish a significant equity interest in, and with a view toward seeking control of or the entire equity interest in, [Polaroid]." The Schedule 13D further disclosed that, in a letter to Polaroid dated July 19, 1988, Shamrock made a proposal to acquire Polaroid in a negotiated transaction in which all shareholders of Polaroid would receive $40 in cash per share of common stock *or* "an agreed upon lesser amount in cash plus the right to receive a pro rata share ... of the after tax proceeds of any recovery" in the patent infringement action between Polaroid and Eastman Kodak.[1]

On August 12, 1988, Shamrock filed an amendment to its Schedule 13D in which it disclosed that, by letter to Polaroid dated August 11, 1988, Shamrock had advised Polaroid of an increase in its acquisition proposal, such that each Polaroid shareholder would receive $40 in cash per share of common stock *plus* the right to receive a pro rata share of 40% of the net proceeds of any recovery in the Kodak litigation (the "40/40 Proposal"). Polaroid's Board of Directors rejected Shamrock's 40/40 Proposal on August 16, 1988.

On September 9, 1988, Shamrock commenced a $2.6 billion tender offer ("the Offer") for all outstanding common shares of Polaroid at $42 per share, excluding the

---

**1.** In April 1976, Polaroid brought suit against Kodak Corporation in federal court in Massachusetts charging that Kodak had infringed several patents held by Polaroid. On October 11, 1985, the federal court entered judgment in Po-

laroid's favor with respect to certain of the patents. All appeals as to liability by Kodak have been exhausted. January 9, 1989, has been established by the court as the date for commencement of the trial on damages.

ESOP shares, the issuance of which has been challenged in another action. The tender offer is expressly made subject to several conditions, including:

(1) that at least 90% of the outstanding shares be tendered, excluding the 9,716,600 shares of the Polaroid Stock Equity Plan held by the Polaroid ESOP ("Minimum Condition");

(2) that the issuance of stock to the Polaroid ESOP be "invalidated or rescinded pursuant to a final judicial determination or the purchaser otherwise being satisfied that the ESOP shares are not validly outstanding" ("ESOP Condition");

(3) that necessary financing be obtained; and

(4) that the Polaroid Preferred Stock Purchase Rights be redeemed or that the purchaser be satisfied that such rights are unenforceable.

Notably, the Offer also states that, if the ESOP Condition is not satisfied prior to the expiration of the Offer, or if Shamrock determines, in its sole discretion, that the ESOP Condition cannot timely be satisfied, Shamrock currently intends to amend its Offer so as to: (1) waive the ESOP Condition; (2) reduce the tender offer price to $40 per share; and (3) adjust the number of shares required to satisfy the Offer's 90% minimum condition so as to take into account the additional ESOP shares.

The Offer was originally set to expire on October 6, 1988, unless extended. The cover page of the Offer explicitly states that: "The purchaser currently intends to extend the offer from time to time until the ESOP Condition is satisfied or the purchaser determines, in its sole discretion, that the ESOP Condition cannot timely be satisfed." On September 30, 1988, Shamrock extended its Offer until October 17, 1988.

Wertheim Schroder & Co. Inc. ("Wertheim") and Drexel Burnham Lambert Inc. ("Drexel") are acting as financial advisers to Shamrock. Additionally, they are co-dealer managers for the Offer.

Simultaneously with the commencement of the Offer, Shamrock proposed to Polaroid a negotiated merger (the "Proposed Merger") under which, among other things: the tender offer price would be increased to $44 per share if the ESOP Condition is satisfied (or $42 per share if it is not); Shamrock would buy up to 90% of Polaroid's outstanding shares in the tender offer; the Offer minimum would be reduced to a simple majority; and shares not purchased in the Offer would receive consideration consisting of, in whole or in part, transferable certificates of interest representing a percentage, to be negotiated by Polaroid and Shamrock, of the net proceeds received by Polaroid in the Kodak Litigation. In a letter delivered September 9, 1988, Shamrock advised Polaroid of its willingness to negotiate and to increase the value of its tender offer.

On September 20, 1988, Polaroid filed a Schedule 14D-9 which reported that, on September 19, 1988, Polaroid's Board of Directors determined to reject Shamrock's $42 per share tender offer. The 14D-9 does not reflect any consideration by Polaroid of the Proposed Merger.

Shamrock filed with the SEC, on September 28, 1988, a Schedule 14D-1 amendment which describes the claims made by Polaroid in this action and sets forth Shamrock's denial of all of such claims.

### B. Related Litigation

Two related suits between these parties are pending in the Delaware Chancery Court. The first (the "ESOP Action"), which was commenced on July 20, 1988, concerns allegations by Shamrock that Polaroid's Board of Directors acted improperly in approving, on July 12, 1988, the specific terms of the ESOP. Shamrock charges, among other things, that the Polaroid directors violated their fiduciary duties to the company's stockholders by utilizing the ESOP as a device to entrench incumbent management. The trial in the ESOP Action is scheduled to begin on October 19, 1988.

The second action in the Delaware Chancery Court (the "Poison Pill Action"), filed on September 9, 1988, concerns allegations by Shamrock that Polaroid should redeem the rights issued by Polaroid pursuant to

its shareholder rights plan. No hearing date has been set in that case.

## II. ISSUES

As sumarized by Polaroid in its Reply Brief, there are five issues before the Court on Polaroid's Motion For A Preliminary Injunction:

(1) whether the Offer violates the All–Holders rule, Rule 14d–10(a)(1);

(2) whether the assertion in the Offer that all conditions, including the Minimum Condition, may be waived is materially misleading;

(3) whether the stated expiration date of October 17, 1988, is materially misleading;

(4) whether Shamrock's financial advisers are bidders and whether this information should have been disclosed; and

(5) whether the Offer and Shamrock's Schedule 13D and 14D–1 should have identified and disclosed more specific information concerning two limited partners who Polaroid alleges were part of Shamrock's "group."

## III. PRELIMINARY INJUNCTION STANDARD

To succeed on a motion for a preliminary injunction in the Third Circuit, the moving party must establish:

(1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted.... Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Eli Lilly & Co. v. Premo Pharm. Labs*, 630 F.2d 120, 136 (3d Cir.1980) (quoting *Constructors Ass'n of Western Penna. v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978)), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980).

A preliminary injunction is "an extraordinary remedy" which "must be sparingly granted." *Black & Decker Corp. v. American Standard, Inc.*, 679 F.Supp. 1183, 1191 (D.Del.1988) (citing *Norfolk Southern Corp. v. Oberly*, 594 F.Supp. 514, 519 (D.Del.1984)), *aff'd.*, 822 F.2d 388 (3d Cir. 1987). Such relief is granted "only after a strong showing of necessity." *Tootsie Roll Indus. v. Sathers, Inc.*, 666 F.Supp. 655, 658 (D.Del.1987). The moving party has a " 'heavy burden of proof' of establishing the necessary elements for a preliminary injunction by 'clear and convincing proof.' " *Black & Decker*, 679 F.Supp. at 1191 (citing *Sherman v. Posner*, 266 F.Supp. 871, 873 (S.D.N.Y.1966)).

In tender offer cases, injunctive relief is typically best applied at the preliminary injunction stage, if warranted. *See Ronson Corp. v. Liquifin Aktiengesellschaft*, 483 F.2d 846, 851 (3d Cir.1973); *Pabst Brewing Co. v. Kalmanovitz*, 551 F.Supp. 882, 895 (D.Del.1982); *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 947 (2d Cir.1969) (Friendly, J.). However, "district judges must be vigilant against resort to the courts on trumped-up or trivial grounds as a means for delaying and thereby defeating legitimate tender offers." *Electronic Specialty*, 409 F.2d at 947.

## IV. DISCUSSION

### A. "All Holders" Rule

Rule 14d–10 under the Exchange Act, 15 U.S.C. § 78a *et seq.* (1981), provides in pertinent part that:

(a) No bidder shall make a tender offer unless:

(1) The tender offer is open to all security holders of the class of securities subject to the tender offer; and

(2) The consideration paid to any security holder pursuant to the tender offer is the highest consideration paid to any other security holder during such tender offer.

17 C.F.R. § 240.14d–19 (1988). Section (a)(1) of Rule 14d–10 is referred to as the "All–Holders Requirement," the purpose of which is to "assur[e] fair and equal treatment of all holders of the class of securities

that is the subject of a tender offer...." Amendments to Tender Offer Rules, Exchange Act Release No. 23,421 [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 84,016 at 88,188 (July 11, 1986). In short, the Rule prohibits a tender offeror from offering different prices to different members of the same class of securities.

Polaroid alleges here that the $42–per-share price being offered to holders of common stock is not similarly available to holders of the ESOP shares, which are expressly excluded from the $42 Offer. Polaroid notes that Shamrock's Offer purports to be an "Offer to Purchase for Cash All Outstanding Shares of Common Stock ... of Polaroid Corporation at $42 Net Per Share." Offer at 1.

Shamrock acknowledges as much, but argues that its $42 Offer is premised on the invalidity of the ESOP shares. In effect, Shamrock asserts that it should not have to include in its Offer shares that it believes are legally invalid, and thus arguably not "outstanding." Shamrock further points out that, if the ESOP Condition is not fulfilled, it is Shamrock's present intention to amend its Offer and lower its price so as to purchase all the shares of common stock, including the ESOP shares, at $40 per share.[2] As an additional argument, Shamrock questions whether Polaroid has standing to assert a claim under the All Holders Rule.

■ Because target companies are generally allowed to assert disclosure claims on behalf of shareholders, the Court will assume here, in the absence of controlling caselaw, that Polaroid has standing to raise the All–Holders claim on behalf of its shareholders. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 62, 95 S.Ct. 2069, 2078, 45 L.Ed.2d 12 (1975) (Court has not hesitated to recognize power of federal courts to fashion private remedies for securities laws violations when to do so is consistent with legislative scheme and necessary for protection of investors); *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir.1985) (target corporation has private right of action under Williams Act to seek remedy of corrective disclosures).

■ Assuming *arguendo* that Polaroid does have standing, the Court nevertheless finds no violation of the All Holders Rule. Although the parties cite no caselaw interpreting this two-year-old rule, the Court finds that Shamrock's Offer does not violate the Rule's mandate of equal treatment of shareholders of the same class. Shamrock should not be forced to make its offer to holders of ESOP shares, the issuance of which Shamrock is challenging in another action. The fact that the ESOP shares may be declared invalid in the future *is* relevant, contrary to Polaroid's assertion. Stanley Gold, president of Shamrock, testified on behalf of Shamrock that he made the decision to exclude from the Offer the ESOP shares because he did not consider the ESOP shares valid. Gold dep. Tr. 54–56.

Notably, the Court is *not* holding here that a tender offeror's mere good-faith belief as to the validity of shares controls, as a matter of law, the shares to which a tender offer must be made. Rather, the court holds that, *under the particular facts of this case*, Shamrock's exclusion of the ESOP shares in its original Offer was not inconsistent with the All Holders Rule given Shamrock's belief, as detailed in its Offer, that the ESOP shares were not validly issued. The particular circumstances to which the Court refers include, *inter alia*, the timing and scope of Polaroid's ESOP as well as the fact that Shamrock

---

**2.** The Offer to Purchase states at p. 2 that:

If the ESOP Condition is not satisfied prior to the Expiration Date, or if the Purchaser determines, in its sole discretion, that the ESOP Condition cannot timely be satisfied, the Purchaser currently intends to amend the Offer as follows: (i) waive the ESOP Condition; (ii) reduce the price to be paid in the Offer to $40 per Share; and (iii) amend the Minimum Condition so that the Offer would be conditioned upon a number of Shares being validly tendered prior to the Expiration Date and not withdrawn which, when added to the number of Shares beneficially owned by the Purchaser and its affiliates, will constitute at least 90% of the then outstanding Shares, including the ESOP Shares.

has sued to challenge the validity of the ESOP. Because of this belief on the part of Shamrock and its stated intention to amend its Offer to include the ESOP shares at $40 per share upon a judicial determination of the ESOP's validity, the Court does not deem this the type of situation that the All Holders Rule was designed to remedy.

### B. Waiver of Minimum Condition

Sections 14(d) and 14(e) of the Exchange Act[3], 15 U.S.C. §§ 78n(d), 78n(e), and Regulation 14D thereunder, 17 C.F.R. § 240.14d–1 *et seq.*, require tender offerors to disclose all material facts in connection with a tender offer. *See, e.g., Flynn v. Bass Bros. Enterprises, Inc.,* 744 F.2d 978, 983–84 (3d Cir.1984); *Boyertown Burial Casket Co. v. Amedco, Inc.,* 407 F.Supp. 811, 816 (E.D.Pa.1976). These provisions were designed "to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party." *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2076, 45 L.Ed.2d 12 (1975); *McFadden Holdings, Inc. v. John Blair & Co.,* No. 86–161 (D.Del. May 16, 1986). The *Rondeau* Court stated that the Exchange Act was designed to be evenhanded—Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids. *Rondeau,* 422 U.S. at 58, 95 S.Ct. at 2076.

All material information must be disclosed, whether or not specifically required by Sections 14(d) and 14(e). *Revlon, Inc. v. Pantry Pride, Inc.,* 621 F.Supp. 804, 808 (D.Del.1985). A "material fact" is one that "would have assumed actual significance in the deliberations of the reasonable shareholder" in considering whether to tender his or her shares. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Importantly, though, there exists a limitation on the duty to disclose under the Williams Act. Offerors have no duty to "publicly admit the culpability of their actions." *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1490 (D.Del.1984) (referring to *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978)). When there is a good-faith dispute as to whether illegal conduct occurred, the Williams Act requires only a good-faith disclosure of the issue and the possible liability of the offeror. *Revlon,* 621 F.Supp. at 812; *Avnet, Inc. v. Scope Industries, et al.,* 499 F.Supp. 1121, 1124–26 (S.D.N.Y.1980).

Shamrock's Offer states that "[t]he Purchaser reserves the right (but shall not be obligated) to waive any or all conditions of the Offer." Offer at 5. Polaroid alleges that the 90% Minimum Condition of the Offer cannot be waived without violating federal margin regulations and that Shamrock's reservation of the right to waive any or all of the conditions to the Offer is therefore false and misleading.

Under Regulations G, T, U and X, 12 C.F.R. §§ 207, 220, 221, and 224 (the "Margin Regulations"), promulgated by the Federal Reserve Board under Section 7 of the Exchange Act, 15 U.S.C. § 78g, loans made to purchase margin stock that are secured directly or indirectly by any margin stock may not exceed 50% of the market value of the stock being purchased (the "50% limitation"). Under the terms of the Offer, Shamrock's secured bank financing will itself exhaust the 50% limitation. Offer at 16. However, Shamrock also intends to

---

**3.** Section 14(d)(1) requires tender offerors to file certain information with the SEC. Section 14(e) reads:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

15 U.S.C. § 78n(e) (1982).

finance an acquisition of Polaroid margin stock through the sale of $1.3 billion of non-bank subordinated financing ("junk bonds" in Wall Street parlance). Offer at 16, 22. Pursuant to the Federal Reserve Board's interpretation of Regulation G in the context of a corporate acquisition by a shell corporation, 12 C.F.R. § 207.112 (1988), the junk bonds also will be presumed to be indirectly secured by the stock acquired by Shamrock, thus exceeding the Margin Regulations 50% limitation described above. *Cf. Koppers Co. v. American Express Co.*, 689 F.Supp. 1371, 1399–1402 (W.D.Pa.1988).

Section 207.112(f) provides three exceptions to the 50% limitation: (1) a guarantee of the junk bonds by an entity with "substantial non-margin stock assets or cash flow", (2) a merger agreement in place, or (3) the purchase by the acquiror of enough shares of the target to effect a "short-form" merger under applicable state law—in this instance 90%, pursuant to Del.Code Ann. Tit. 8, § 253 (1987). The parties concede that, absent a guarantee or merger agreement, Shamrock must acquire 90% of the outstanding shares tendered in order to effect a short-form merger and avoid a violation of the Margin Regulations. Polaroid's argument is that, because there is no present intention on the part of Shamrock to effect a guarantee or merger, it is false and misleading for Shamrock to state that it may still waive the 90% Minimum Condition in its Offer. Such a statement by Shamrock, Polaroid alleges, has misled Polaroid stockholders and the investing public about Shamrock's ability to complete the tender offer if less than 90% of outstanding Polaroid share are tendered. Shamrock counters with the argument that, while it does not have a present plan to use a guarantee or sign a merger, it could alter that intention and choose to waive the 90% Minimum.

■■ Before the Court reaches the merits of this dispute, there is the threshold question of standing. In the Third Circuit, a party does not have standing to maintain a private right of action under Section 7 of the Exchange Act or the margin regula-

tions thereunder. *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778, 788 (3d Cir.1982). Although Polaroid cannot maintain a private action on the margin regulations directly, it does have standing to allege failure to disclose margin violations. *Revlon*, 621 F.Supp. at 814; *Alaska Interstate Co. v. McMillan*, 402 F.Supp. 532, 554 n. 28 (D.Del.1975); *Pabst Brewing Co. v. Kalmanovitz*, 551 F.Supp. 882, 885 (D.Del. 1982).

■ The Court finds that Shamrock's reservation of the right to waive the 90% Minimum Condition was appropriate and was not false and misleading. While Shamrock has no present intention to negotiate a merger or effect a guarantee, it certainly has every legal right to alter that intention in the future, amend the Offer and waive the 90% Minimum Condition. Polaroid is incorrect in asserting that Shamrock must have either a present intention to seek a guarantee or a merger agreement in hand in order to reserve the right to waive the Minimum Condition. Although the Minimum Condition is currently non-waivable, changed circumstances could readily allow Shamrock to waive it. The very nature of tender offers demands such flexibility.

Polaroid would have the Court believe that Shamrock's reservation of its right to waive the Minimum Condition is unusual and intentionally misleading. To the contrary, the SEC has stated that:

> Tender offer materials typically contain various reservations of rights whereby the bidder reserves the right to, among other things, extend or terminate the offer, waive conditions, increase or decrease the consideration offered or the number of shares being sought, or otherwise alter terms. The Commission recognizes that such reservations are an acceptable means of permitting the bidder to take action varying the terms of an offer, so long as the action taken would not contravene the Williams Act and rules.

Interpretive Release Relating to Tender Offer Rules, Exchange Act Release No. 34–

24296 (April 3, 1987), 52 Fed.Reg. 11,460 (April 9, 1987).

### C. The Expiration Date

Polaroid next alleges that it is "patently misleading" for the Offer to state that it will close on October 17, 1988 (originally October 6, 1988). This is misleading, according to Polaroid, because the ESOP Condition is incapable of fulfillment by October 17, 1988 (given that the ESOP Action is not scheduled for trial until October 19, 1988) and because the "conditional and incomplete state of Shamrock's financing arrangements and the disclosure and timing requirements of the Williams Act and SEC regulations" make it unlikely or impossible that the Offer will close on the announced date.[4]

Again, the Court is unmoved. Shamrock's closing date of October 17, 1988, is not misleading in light of Shamrock's statement on the cover of the Offer that the Offer will expire on October 6 (October 17) *unless extended.* The cover page explicitly states in bold letters that: "The purchaser currently intends to extend the Offer from time to time until the ESOP Condition is satisfied or the purchaser determines, in its sole discretion, that the ESOP Condition cannot timely be satisfied." The Offer sufficiently describes the ESOP Action and notes that the trial will not begin until October 19, 1988. Therefore, it should be obvious to any reasonable holder of Polaroid stock that a final judicial determination with regard to the ESOP will not be made before October 19 and that it is Shamrock's present intention to periodically extend the Offer until the ESOP condition is satisfied. There exists the additional possibility that Shamrock could be otherwise satisfied that the ESOP shares are not validly outstanding, *e.g.,* by means of a settlement of the ESOP Action.

The Court will not tarry on Polaroid's other allegations regarding the conditional nature of Shamrock's financing and the disclosure and timing requirements. No further disclosure on the expiration date can reasonably be required. *See Revlon,* 621 F.Supp. at 813. (Court found conditional nature of expiration date adequately disclosed).

### D. Alleged Co–Bidders

Polaroid alleges that Wertheim and Drexel, Shamrock's financial advisers and co-dealer managers for the Offer, are doing more than just financing the tender offer and are therefore "bidders" as to which more information should have been disclosed. Section 14(d) of the Exchange Act mandates disclosure requirements for a person (or entity) who, after consummation of a tender offer, "would, directly or indirectly, be the beneficial owner of more than 5 per centum of" the equity stock of the surviving corporation. 15 U.S.C. § 78n(d). Rule 14d–1 applies the disclosure requirements of Section 14(d) to all "bidders." A "bidder" is "any person who makes a tender offer or on whose behalf a tender offer is made." 17 C.F.R. § 240.14d–1(b)(1).

Courts have struggled to apply this seemingly simple definition, and holdings on this issue have been quite fact-specific. An entity is a bidder only if it directly capitalizes the acquisition vehicle, *see Prudent Real Estate Trust v. Johncamp Realty, Inc.,* 599 F.2d 1140, 1142 (2d Cir.1979); *Warnaco, Inc. v. Galef,* slip op. at 14, No. B–86–146 (D.Conn. March 3, 1986), *aff'd,* 800 F.2d 1129 (2d Cir.1986); *Revlon,* 621 F.Supp. at 814; *Pabst Brewing Co. v. Kalmanovitz,* 551 F.Supp. 882, 892 (D.Del. 1982); *Gray Drug Stores, Inc. v. Simmons,* 522 F.Supp. 961, 966 (N.D.Ohio

---

**4.** The Williams Act and SEC rules impose timing requirements, the purpose of which is to ensure that required disclosure is effective. Tender offers must be kept open for at least twenty business days to give shareholders adequate time to consider the bidders' disclosures. Rule 14e–1(a), 17 C.F.R. § 240.14e–1(a). After disclosure of any material change in the terms or conditions of a tender offer, the offer must remain open for a period sufficient to permit investors to assess the additional information. Exchange Act Release No. 24,296, 38 SEC Docket 17 (April 3, 1987), 52 Fed.Reg. 11,460 (April 9, 1987); Amendments to Tender Offer Rules, Exchange Act Release No. 23,421 [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 84,016 (July 11, 1986).

1981), and was consequently to receive some control over the common stock, *see Johncamp*, 599 F.2d at 1142; or if it was a principal in the takeover plan. *See Pabst Brewing*, 551 F.Supp. at 893; *Riggs National Bank of Allbritton*, 516 F.Supp. 164, 167, 171 (D.D.C.1981). While the mere legal right to receive equity stock, without more, is not sufficient to make that entity a bidder, courts have looked to the existence of intent to exercise that right as a factor in deciding whether the entity is a bidder. *See McFadden Holdings, Inc. v. John Blair & Co.*, slip op. at 17, No. 86–161 (D.Del. May 16, 1986); *Gray Drug Stores*, 522 F.Supp. at 967 (no evidence that alleged bidder "has initiated or has a present plan or intent to initiate transaction" pursuant to its right to purchase).

As to Shamrock's Offer, Polaroid argues that Drexel and Wertheim are bidders because they (1) are to provide $1.3 billion of the financing conditioned on their "satisfaction" with the structure of the deal; (2) will have the option to purchase up to 21% (10.5% each) of the equity interest in the acquisition vehicle to acquire Polaroid within ten days following the consummation of the acquisition, or following notice from Shamrock of its intention to consummate the acquisition using the Financial Advisors' interim or bridge financing (but before extending such financing); and (3) will receive substantial fees for work in connection with the Offer.

In applying the rather scant law as to who is a bidder to the facts of this case, the Court is guided by two recent decisions. *See City Capital Associates Limited Partnership v. Interco, Inc.*, 696 F.Supp. 1551 (D.Del.1988), *aff'd*, 860 F.2d 60 (3d Cir.1988); *Koppers Co. v. American Express*, 689 F.Supp. 1371 (W.D.Pa.1988). In *City Capital*, Interco, the target, alleged that Drexel and Chase Manhattan Bank ("Chase") were bidders as to whom more disclosure should have been made. *City Capital*, at 1558. Interco stressed that Drexel had an option in 29–36% of the equity in the acquisition entity if the tender offer succeeded and that Drexel was being paid substantial fees. *Id.* at 1558.

The Court held that, on those facts, Drexel was not a bidder and thus did not have to make Schedule 14D–1 disclosures. The Court also concluded that Chase was not a bidder since Chase's fees were less significant than Drexel's and the bank would only receive a one-percent equity interest in the acquiring entity upon completion of the offer. *Id.* at 1558. However, the Court also took the opportunity to note that "Drexel has gotten dangerously close to the point at which this Court would not hesitate to classify Drexel as a bidder." *Id.*

In *Koppers*, conversely, the Court enjoined a tender offer after finding that Shearson Lehman Brothers Holdings, Inc. ("Shearson") was a bidder and had failed to sufficiently disclose. *Koppers*, 689 F.Supp. at 1390–91. The Court found that Shearson was "playing a central participatory role" and had "unquestionably been a motivating force fueling the formation and capitalization" of the entity serving as the vehicle for the tender offer. *Id.* The Court's holding turned on the multiple roles of Shearson—"advisor, underwriter, equity partner, and financier." Also dispositive was the fact that Shearson became involved in the takeover plan at a very early stage and took "an active, even an aggressive, role in the takeover." *Id.* at 1389.

In the present case, Shamrock argues that *Koppers* is distinguishable. It points out that the *Koppers* court itself noted that the arrangement involved in that case was "quite novel" and stated that: "There seems to be no dispute that this is the first time that a broker dealer has become so intimately involved in a tender offer." *Id.* at 1390.

While the Court is mindful of Judge Farnan's warning to Drexel in *City Capital*, the Court does not find a high probability that Polaroid will be successful in establishing at a trial on the merits that Drexel and Wertheim are bidders for Williams Act purposes. What are "standard investment banking advisory services" in transactions of this sort is certainly a matter of some debate. There is arguably evidence here to suggest that Drexel and Wertheim are act-

ing as more than mere financiers. While the Court acknowledges that Drexel and Wertheim will likely exercise their options if the Offer is completed, will earn substantial fees and will have input as to the structure of the deal, it does not find these facts sufficiently compelling to label Drexel and Wertheim as bidders and to enjoin the Offer on that ground.

*Koppers* is distinguishable on its facts. In *Koppers,* Shearson contributed more than $23 million to the acquiring partnership *prior to* the tender offer. *Koppers,* 680 F.Supp. at 1389. Had the offer been consummated, Shearson would have held "slightly less than a 50% interest in the tender offeror." *Id.* at 1390. Shearson's involvement in the tender offer was such that the equity position and financial condition of the Shearson entities would have been material to a Koppers shareholder considering whether to sell. *Id.* at 1391–93.

The facts in this case are simply not as compelling. Shamrock concedes that the idea of investing in Polaroid was introduced to Shamrock by Wertheim. Shamrock Br. p. 9. However, Drexel and Wertheim have no absolute right to approve the structure of the transaction, but merely a right not to participate. Bilger dep. Tr. at 83–87. They have no current equity position in the transaction. *Id.* at 108. Finally, neither Drexel nor Wertheim determined the price of the Offer. *Id.* at 54–55. The evidence does not support the assertion that the financial advisers *controlled* the Offer.

■ Even if further information about Drexel and Wertheim would be material to a Polaroid shareholder in this case, the Court finds that the dispute as to the status of these entities was adequately disclosed when Shamrock filed its amended 14D–1 on September 28, 1988. That disclosure of the good-faith dispute concerning the Financial Advisers' status as bidders was sufficient to put a Polaroid shareholder on notice of the issue. *See City Capital,* at 1556–57 (disclosure of good-faith dispute gives shareholder sufficient infor-

mation to make rational, informed decision whether to tender shares).

### E. Section 13(d) Group

Polaroid's final argument is that certain unidentified limited partners of Emerald Isles Associates, L.P. ("Emerald"), the limited partnership created by Shamrock to acquire Polaroid stock, are part of the Section 13(d) "group" and that additional information concerning these persons or entities should have been disclosed pursuant to Rule 13d–1.

Rule 13d–1 requires any "person" who beneficially owns five percent or more of a company's stock to file with the SEC within ten days after acquiring such ownership a statement on Schedule 13D detailing information about such person's ownership interest and financial background. 17 C.F.R. § 240.13d–1 (1988). Section 13(d)(3) provides that if two or more persons act as a group for the purpose of acquiring, holding or disposing of equity securities, such group shall be deemed a "person" for purposes of Section 13(d). 15 U.S.C. § 78m(d)(3) (1988); *see* Rule 13d–5(b), 17 C.F.R. § 240.13d–5(b). The obligatory disclosures under Rule 13d–1 must be made for every member of the group. *See, e.g., Wellman v. Dickinson,* 682 F.2d 355, 362 (2d Cir.1982), *cert. denied, sub nom. Dickinson v. SEC,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *see also* Schedule 13D, 17 C.F.R. § 240.13d–101.

The statute contains no requirement that the members of the alleged group be committed to acquisition, holding or disposition on any specific set of terms. *Wellman,* 682 F.2d at 363. Rather, the touchstone of a Section 13(d) group is that the members combined in furtherance of a common objective. *Id.; Bath Industries, Inc. v. Blot,* 427 F.2d 97, 111 (7th Cir.1970). Also, the concerted action of the group's members need not be expressly memorialized in writing. *Wellman,* 682 F.2d at 363; *Securities and Exchange Commission v. Savoy Indus., Inc.,* 587 F.2d 1149, 1163 (D.C.Cir. 1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979).

 In applying Section 13(d)(3) here, the Court notes that the law's purpose was to "prevent a group of persons who seek to pool their voting or other interests in the securities of an issuer from evading the provisions of the statute because no one individual owns more than [five percent] of the securities." *Management Assistance, Inc. v. Edelman,* 584 F.Supp. 1016, 1019 (S.D.N.Y.1984) (quoting H.R.Rep. No. 1711, 90th Cong.2d Sess. (1968), *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2811, 2814)). Section 13(d) was designed to alert investors to potential changes in corporate control and to provide them with an opportunity to evaluate the effect of these potential changes. *Wellman,* 682 F.2d at 365.

Shamrock's Offer does disclose that unidentified "affiliates" of two unidentified limited partners control 190,000 shares of Polaroid stock. Offer at 15. It further states that these shares "have not been and will not be contributed to the Partnership and the Partnership disclaims beneficial ownership of such Shares." *Id.* However, the Offer does not disclose the identity or any further information regarding those affiliates or limited partners.

Shamrock argues that there is no allegation or evidence of any agreement between Emerald and its limited partners to "act together" in relation to Polaroid stock. Polaroid counters with its assertion that there is credible circumstantial evidence of concerted action based on the "substantial number" of shares controlled by the limited partners and their "substantial veto power over Shamrock's conduct in the course of the tender offer." *See* Offer at 14.

 Despite the parties' finger-pointing as to who is responsible for the meager record on this issue, the Court finds that there is insufficient evidence from which it can infer any concert of action among the unidentified limited partners and the group that filed the original Schedule 13D. The existence of a limited partnership relationship is not a basis for presuming the parties acted as a group. *See Edelman,* 584 F.Supp. at 1019 (quoting *Transcon Lines v. A.G. Becker, Inc.,* 470 F.Supp. 356, 375

(S.D.N.Y.1979) ("Mere relationship ... is insufficient to create the group which is deemed to be a statutory person.")).

Two additional facts support the conclusion that no further disclosure of the unidentified limited partners is necessary. First, the existence of the 190,000 shares and the fact that they are owned by affiliates of limited partners of Emerald are disclosed in the Offer. Offer at 15. Second, the number of shares involved in this claim is minimal—approximately ³/₁₀ of one percent of Polaroid's outstanding shares (excluding the ESOP shares). Even assuming there was evidence of some concert of action, the number of shares involved could hardly form a sufficient basis for enjoining this Offer.

## V. CONCLUSION

Shamrock's Offer is hardly a model of clarity. By the same token, it is a detailed document of some 47 pages. Such documents are not to be examined through a microscope, but are to be judged through the lens of the Williams Act, whose purpose is to protect investors, not target companies and their incumbent management. *Kalmanovitz v. G. Heileman Brewing Co.,* 769 F.2d 152, 158 (3d Cir.1985) (quoting *Piper v. Chris–Craft Indus.,* 430 U.S. 1, 35, 97 S.Ct. 926, 946, 51 L.Ed.2d 124 (1977)). The Court is cognizant that incumbent management sometimes attempts to use the Williams Act to perpetuate its control and ward off valid takeover attempts. As Judge Farnan recently stated: "Disclosure should not be permitted to become a tool of a litigious management's effort to thwart or stall the consideration by shareholders of a pending offer." *Arkansas Best Corp. v. Pearlman,* 688 F.Supp. 976, 981 (D.Del.1988).

Again, Shamrock's tender offer statement is certainly not perfect. But perfection is not the standard by which offering statements are judged. Williams Act disclosure "is not a rite of confession or exercise in common law pleading," and tender offers should not be subjected "to a nit picking judicial scrutiny which will in the long run injure shareholders by preventing

them from taking advantage of favorable offers." *Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 5–6 (2d Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). As Judge Friendly similarly stated in *Electronic Specialty:*

> Probably there will no more be a perfect tender offer than a perfect trial. Congress intended to assure basic honesty and fair dealing, not to impose an unrealistic requirement of laboratory conditions that might make the [Williams Act] a potent tool for incumbent management to protect its own interests against the desires and welfare of the stockholders.

409 F.2d at 948.

Shamrock's Offer adequately and accurately discloses sufficient material information under SEC Rules and Regulations for Polaroid shareholders to make an informed decision whether to tender. Polaroid has demonstrated neither a likelihood of success on the merits nor irreparable injury. Therefore, Polaroid has not met the heavy burden of proof necessary to support the issuance of a preliminary injunction against Shamrock's Offer, and Polaroid's Motion for a Preliminary Injunction is denied.

IT IS SO ORDERED.